UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 06-22862-CIV-GOLD/TURNOFF

IN ADMIRALTY

SONYA HESTERLY,

      Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,
KETHE BERGHALL, AMRATCAL SHAU,
and [F/K/U] UATE,

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS BERGHALL AND SHAH'S
## MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**THIS CAUSE** comes before the Court on Defendant Shah's Motion to Quash

Service and Motion to Dismiss for Lack of Personal Jurisdiction [DE 95], and Defendant

Berghall's Motion to Quash Service and Motion to Dismiss for Lack of Personal Jurisdiction

[DE 108] (collectively, the "Motions"). The parties have filed responses and replies, as well

as the affidavits of each Defendant.  In my previous Order Following Telephonic Status

Conference [DE 133], I stayed the proceedings pending resolution of the jurisdictional

challenges, and ordered the parties to conduct preliminary jurisdictional discovery. On

December 28, 2007, Magistrate Judge Turnoff issued an Order requiring corporate

Defendant Royal Caribbean Cruises, Ltd. ("Royal Caribbean") to respond to certain

interrogatories and requests for admissions. [DE 146]. The Magistrate Judge limited the

1

responses to questions regarding the number of patients treated by each doctor, as well

as the location and dates of treatment, occurring within Florida waters to the "particular

voyage where Plaintiff was a passenger."[1] Neither party appealed the Magistrate Judge's

Order. On February 4, 2008, Plaintiff filed a supplemental memorandum in support of her

opposition to Defendants' Motions, and the deposition transcript of David Banciella[2],

corporate representative of Defendant Royal Caribbean.

I scheduled an evidentiary hearing on February 14, 2008. Plaintiff did not subpoena

the corporate defendant's representative, and did not request that either of the doctors

appear. Plaintiff herself did not appear at the evidentiary hearing. Nor did she attempt to

depose either of the doctors as part of the jurisdictional discovery. As a result, the record

consists of the uncontested affidavits of Drs. Shah and Berghall, the deposition transcript

---

[1]

This limitation only applied as to Defendant Royal Caribbean. Through Interrogatories, Plaintiff asked Drs. Berghall and Shah to identify the number of patients they treated in Florida at any point of time. Specifically, Plaintiff asked:

12.    Please state the names and addresses of all passengers, crew-members, or patients examined, treated, medicated, advised, or medically consulted with by [SHAH/BERGHALL] while the vessel or vessels were docked in Miami, Key West, Fort Lauderdale, or anywhere in the State of Florida.

13.    Please state the names and addresses of all passengers, crewmembers, or patients examined, treated, medicated, advised, or medically consulted with by [SHAH/BERGHALL] while the vessel or vessels were within the territorial waters of the State of Florida.

(Ans. Interrogs., DE 152 at Ex. A). Both doctors answered that they never treated any patients while the vessel was docked in Florida, or while the vessel was within the territorial waters of the State of Florida. (*Id.*).

[2]

Plaintiff was granted leave to conduct jurisdictional discovery. She issued Interrogatories and Requests for Admissions to Drs. Berghall and Shah, as well as to Royal Caribbean. Plaintiff only deposed a corporate representative from Royal Caribbean.

2

of Banciella, Plaintiff's affidavit, the doctors's answers to interrogatories, and a copy of Royal Caribbean staff members' sign in sheets to the infirmary for January 8 and 15, 2006. During the February 14 Hearing, the parties presented their arguments on the record evidence, and agreed to additional facts. After careful consideration of the Motions and related pleadings, the case file, relevant case law, and the arguments made at the evidentiary hearing, I conclude that Defendants Shah and Berghall must be dismissed for lack of personal jurisdiction.

I. Factual Allegations and Supporting Materials[3]

A. The Incident Aboard the Radiance of the Seas

Plaintiff was a fare paying passenger aboard the Radiance of the Seas ("Radiance"). (Am. Compl., ¶ 4). She embarked the ship on January 8, 2006 in Miami, Florida for a seven (7) day cruise. (Id. at ¶ 16). According to Plaintiff, on January 9, 2006, as she was walking through one of the ship's doorways, she tripped on a loosen and pried-up threshold and fell. (Id. at ¶ 19). During oral argument the parties stipulated that the accident occurred while the ship was on the high seas, and outside of Florida's territorial boundaries. Plaintiff visited the ship's infirmary, where Dr. Berghall examined her. (Am. Compl., ¶ ¶ 29). Plaintiff returned to the infirmary the next day and was treated by Dr. Shah. (Id. at ¶ 36). Plaintiff visited the infirmary once again on January 14, 2006, and was treated by Drs. Berghall and Shah. (Id. at ¶ 38). On January 15, 2006, the ship returned to the Port of Miami. (Id. at ¶ 40). An ambulance met Plaintiff at dockside and transported

---

3

In support of the factual allegations, the parties have submitted the Affidavit of Plaintiff, the Affidavits of Defendants Berghall and Shah with corresponding exhibits, the deposition transcript of Mr. Banciella, and Drs. Berghall and Shah's Answers to Interrogatories.

her to the Emergency Room at Mount Sinai Medical Center in Miami, Florida. (*Id.*). It is undisputed that at the time Drs. Shah and Berghall rendered medical services to Plaintiff the ship was at sea, and outside the territorial waters of the State of Florida and the United States. (Aff. of Shah, ¶ 27; Feb. 14 Hearing Transcript).

B.  The Vessel

The Radiance of the Seas is a Bahamian-flagged cruise ship. (Aff. of Shah, 27). At the time of the alleged incident, Drs. Shah and Berghall were under contract with Royal Caribbean aboard the ship to supply medical services to passengers and crewmembers. (*Id.* at ¶ 25). According to their contracts, Drs. Berghall and Shah were engaged as independent contractors for a period of six months, and Royal Caribbean was permitted to transfer the doctors to any other ship at any time. (*Id.* at ¶ 31; Ship Independent Contractor, DE 108 at Ex. A). During oral argument the parties stipulated that the Radiance's home port was Miami, Florida. The parties also agreed that on a typical week, the vessel would arrive to Miami from a voyage and disembark the current passengers beginning at approximately 8:00 a.m. The embarkation of new passengers would begin in the afternoon of the same day, and the ship would leave on the new voyage that same afternoon. It was also agreed that at all relevant times, the Radiance conducted 7-day voyages, and the first port of call was Ocho Rios, Jamaica. During the time the doctors were aboard the ship, the Radiance's itinerary did not change: (1) it arrived in Miami once a week in the early hours of the morning; (2) the passengers would disembark by 10:00 or 10:30 a.m.; (3) the new passengers would embark by 4:00 p.m., at which time the ship would depart on a new 7-day voyage. Therefore, *at best*, the doctors were within the territorial waters of Florida for approximately 12 hours a week for a six months period.

4

During the time in question, the Radiance did not visit any other Florida ports.

When the vessel would return to Miami following a voyage, the infirmary would be open from 8:00 a.m. to 12:00 p.m. The passengers would be off the ship by approximately 10:30 a.m. Theoretically, the doctors could treat passengers while the ship was within Florida's territorial boundaries for approximately 2 ½ hours. The doctors could have also treated seaman during those four hours a week. It is not known whether the infirmary was open while passengers boarded the vessel at the commencement of a voyage. Taking all inferences in favor of Plaintiff, I will assume the infirmary re-opened as the new passengers boarded the vessel.

At the February 14 Hearing, the parties agreed that the doctors were paid a fixed salary, plus 9 % commission on all revenue generated from their services. Since seaman received complimentary services, the doctors only received commission when they treated passengers.

During the subject voyage, there were three doctors aboard the Radiance and at least one nurse. It is undisputed that during Plaintiff's voyage, no passengers were treated while the ship was within the territorial boundaries of Florida.

C.    Dr. Amratcal Shah

Dr. Shah was born in Mombasa, Kenya. (Aff. of Amratcal Shah, M.D., ¶ 4). He is a citizen of the United Kingdom, and a permanent resident of Sweden. (Id. at ¶¶ 3, 5). For purposes of the undisputed facts, putting aside the limited time he spent aboard the Radiance while it was within the territorial boundaries of Florida, Dr. Shah has never been a citizen of Florida, or of the United States, nor has he ever resided in Florida or in the United States. (Id. at ¶¶ 4-5).

5

Dr. Shah attended medical school at Uppsala University and the University of Lund in Sweden, and has received extensive medical training in Sweden. (*Id.* at ¶ 7). He also holds a physics degree from Oxford University in England. (*Id.*). He is licensed to practice medicine in Sweden, the United Kingdom, and other European Union Countries. (*Id.*). He is currently practicing medicine at a clinic in Sweden. (*Id.* at ¶ 9).

Dr. Shah is not licensed to practice medicine in Florida or in the United States. (*Id.* at ¶ 12). He has never applied for, attempted or sought to obtain a license to practice medicine in Florida or in the United States. (*Id.*). He is not a member of any Florida or United States' medical associations. (*Id.* at ¶ 10). Putting aside his employment relationship with the Radiance, Dr. Shah has never worked in Florida nor practiced medicine within the State. (*Id.* at ¶¶ 11, 13). Dr. Shah has never owned, operated or controlled an office, medical or otherwise, in Florida or anywhere else in the United States. (*Id.* at ¶ 14).

Dr. Shah has never owned, possessed or held any real property in Florida. (*Id.* at ¶ 15). He has never owned, used or possessed, or held a mortgage or other lien on any real property in Florida. (*Id.* at ¶ 20). Dr. Shah has never had a bank account, a mailing address, post office box or a telephone number in Florida. (*Id.* at ¶ 16). Putting aside the limited time spent aboard the Radiance, Dr. Shah has never operated, conducted, engaged in or carried on a business venture in Florida; never had an office or agency in Florida; never engaged in solicitation or service activities in Florida; and never committed a negligent act within Florida. (*Id.* at ¶ ¶ 17, 18, 20).

Dr. Shah has never contracted to insure any person, property, or risk located within

6

Florida at any time. (*Id.* at ¶ 21). He has never had products, materials, or things processed, serviced, or manufactured by him that were used or consumed within Florida in the ordinary course of commerce, trade, or use. (*Id.* at ¶ 22). Dr. Shah has never breached a contract in Florida by failing to perform acts required by the contract to be performed in Florida. (*Id.* at ¶ 23). Dr. Shah did not treat Plaintiff when the ship was in Florida territorial waters, or in Miami after Plaintiff left the ship. (*Id.* at ¶¶ 28-29).

Dr. Shah's contract with Royal Caribbean was singed on October 8, 2005. (Ship Independent Contractor, DE 99-3; Ans. Interrogs., DE 152 at Ex. A). He was engaged as the ship's "junior doctor" for a period of six months commencing on January 8, 2006 and ending on July 8, 2005. (Ans. Interrogs., DE 152 at Ex. A). He began working aboard the Radiance on January 8, 2006, the same day that Plaintiff boarded the ship. During his time aboard the vessel, the ship's only port of call within Florida was Miami. (*Id.*). Dr. Shah has repeatedly stated that he never treated any patients while the vessel was within the State of Florida, and that he has never treated any patients in Florida. (*Id.*). Dr. Shah did not treat Plaintiff when the ship was in Florida territorial waters, or in Miami after Plaintiff left the ship. (Aff. of Shah, ¶¶ 28-29).

### D. Dr. Kethe Berghall

Dr. Kethe Berghall was born in Esbo, Finland. (Aff. of Kethe Berghall, M.D., ¶ 6). She is a citizen and permanent resident of Finland. (*Id.* at ¶¶ 3). Dr. Berghall has never been a citizen of Florida, or of the United States. (*Id.* at ¶¶ 3,5). For purposes of the undisputed facts, putting aside the limited time she spent aboard the Radiance while it was within the territorial boundaries of Florida, Dr. Berghall has never resided in Florida. (*Id.*

7

at ¶ 5). Dr. Berghall attended medical school at University of Gothenbeurg in Sweden, and has received extensive medical training in Sweden and Finland. (*Id.* at ¶ 7). Dr. Berghall is licensed to practice medicine in Sweden and Finland. (*Id.* at ¶ 8). She is currently practicing medicine at University Hospital of Helsinki, Finland. (*Id.* at ¶ 9).

Dr. Berghall is not licensed to practice medicine in Florida or in the United States. (*Id.* at ¶ 13). She has never applied for, attempted or sought to obtain a license to practice medicine in Florida or in the United States. (*Id.* at ¶ 12). She is not a member of any Florida or United States' medical associations. (*Id.* at ¶ 10). Putting aside her employment relationship with the cruise line, Berghall has never worked or practiced medicine in Florida; she has never owned, operated or controlled an office, medical or otherwise, in Florida or anywhere else in the United States. (*Id.* at ¶¶ 11, 13, 14).

Dr. Berghall has never owned, possessed or held any real property in Florida. (*Id.* at ¶ 15). She has never owned, used or possessed, or held a mortgage or other lien on any real property in Florida. (*Id.* at ¶ 20). Dr. Berghall has never had a bank account, a mailing address, post office box or a telephone number in Florida. (*Id.* at ¶ 16). Putting aside the limited time spent aboard the Radiance, Dr. Berghall has never operated, conducted, engaged in or carried on a business venture in Florida; never had an office or agency in Florida; never engaged in solicitation or service activities in Florida; and never committed a negligent act within Florida. (*Id.* at ¶ ¶ 17, 18, 19).

Dr. Berghall has never contracted to insure any person, property, or risk located within Florida at any time. (*Id.* at ¶ 21). She has never had products, materials, or things processed, serviced, or manufactured by her that were used or consumed within Florida

8

in the ordinary course of commerce, trade, or use. (*Id.* at ¶ 22). Dr. Berghall has never breached a contract in Florida by failing to perform acts required by the contract to be performed in Florida. (*Id.* at ¶ 23).

Dr. Berghall's contract with Royal Caribbean was singed in Helsinki, Finland on October 10, 2005. (Aff. of Berghall, ¶ 26). She was recruited by a Norwegian agent, Dr. Knut Grabo, Medical Manager.(*Id.*). According to the contract, Dr. Berghall was engaged as the "Chief Doctor" aboard the Radiance from November 27, 2005 to March 26, 2006. (Ship Independent Contractor, DE 108 at Ex. A). Dr. Berghall also worked under contract for a period of six months with Royal Caribbean in 2002.[4] (Ans. to Interrogs., DE 152 at Ex. A). During her time with Royal Caribbean, Florida port of calls included Miami and Key West. (*Id.*). Dr. Berghall has repeatedly stated that she has never treated any patients while the vessels were within the State of Florida, and that she never treated any patients in Florida. (*Id.*).

Dr. Berghall rendered medical treatment to Plaintiff aboard the ship on January 9 and 14, 2006. (Aff. of Berghall, ¶ 28). On January 9, 2006, Dr. Berghall examined Plaintiff in the ship's medical facility at 8:45 p.m. while the ship was in or near Haitian waters. (*Id.*). On January 14, 2006, Dr. Berghall examined Plaintiff at 5:30 p.m. while the ship was at sea, and outside the territorial waters of Florida. (*Id.*). On January 14, 2006, Dr. Berghall contacted the bridge to make arrangements for an ambulance to meet the ship the next

---

[4]

The details of Dr. Berghall's earlier contract are unknown. However, during oral argument, the parties agreed that Dr. Berghall had a previous six months contract with Royal Caribbean in 2002, and that the vessel's home port was not within Florida.

day at the Port of Miami. (*Id.* at ¶ 20). Dr. Berghall did not treat Plaintiff when the ship was in Florida territorial waters, or in Miami after Plaintiff left the ship. (*Id.* at ¶ 30)

II. Discussion

In a diversity action such as this case, "a federal court may exercise personal jurisdiction over a non-resident defendant only to the extent permitted by the long-arm statute of the forum state." *Rexam Airspray, Inc. v. Arminak*, 471 F.Supp. 2d 1292, 1297-98 (S.D. Fla. 2007) (citing *Oriental Imps. and Exps., Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890 (11th Cir. 1983)). Under the law of this Circuit, a district court must conduct a two-part inquiry when deciding an issue of personal jurisdiction. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)); *Laux v. Carnival Corp.,* 470 F.Supp 2d 1379, 1381 (S.D. Fla. 2007) (citing *Sculptchair,* 94 F.3d at 626). First, I must determine whether the Florida long-arm statute is satisfied. *Future Tech.*, 218 F.3d at 1249; *Sculptchair*, 94 F.3d at 626; *Kin Yong Lung Indus. Co., Ltd. v. Temple*, 816 So. 2d 663, 665-666 (Fla. 2d DCA 2002). Second, I must determine whether there are sufficient minimum contacts between Defendants and the state of Florida so as to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the U.S. Constitution. *Sculptchair*, 94 F.3d at 626; *Kin Yong*, 816 So. 2d at 666; *see also Future Tech.*, 218 F.3d at 1249.

I begin my analysis by looking to the Florida long-arm statute and the three subsections of that statute under which Plaintiff argues that I may exercise personal jurisdiction over Defendants Berghall and Shah. These subsections of the Florida long-arm

10

statute provide:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state. . . .
>> (f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>>> 1. The defendant was engaged in solicitation or service activities within this state; ...
>
> (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193.

The application of the Florida long-arm statute is a question of Florida law; therefore, I construe the statute as the Florida Supreme Court would construe it. *Rexam*, 471 F.Supp. 2d at 1298 (citing *Oriental Imps.*, 701 F.2d at 890). "[I]n the absence of definitive guidance from the Florida Supreme Court, we follow relevant decisions from Florida's intermediate appellate courts." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir. 2004) (citing 17A James Wm. Moore, et al., *Moore's Federal Practice* § 124.22[3]. 124-87, 124-88). Florida District Courts of Appeal are the law of Florida unless and until overruled by the Florida Supreme Court. *Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992).

Under Florida law, the Florida long-arm statute is strictly construed, *Rexam*, 471 F.Supp 2d at 1298, and the party invoking jurisdiction has the burden of proving personal

jurisdiction. *Sculptchair*, 94 F.3d at 627 ("Under Florida law, the plaintiff bears the burden of proving personal jurisdiction: When a defendant raises through affidavits, documents or testimony a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents.") (internal quotations omitted). Plaintiff's initial burden consists of making "a *prima facie* showing that jurisdiction exists by presenting enough evidence to withstand a motion for directed verdict." *Rexam*, 471 F.Supp 2d at 1298. The burden then shifts to the defendants to challenge the allegations by affidavits and other pleadings. *Id.* If the defendants successfully challenge plaintiff's allegations, "then the plaintiff must affirmatively support its jurisdictional allegations with evidence and may not merely rely upon the factual allegations set forth in the complaint." *Id.* Where the evidence presented by the defendants and plaintiff conflicts, I construe all reasonable inferences in favor of plaintiff. *See Sun Trust Bank v. Sun Int'l Hotels Ltd*, 184 F.Supp. 2d 1246, 1267 (S.D. Fla. 2001). If a court determines that it cannot exercise personal jurisdiction over a defendant, that defendant has "an unqualified right to have an order granting its motion to dismiss." *Rexam*, 471 F.Supp. 2d at 1298 (quoting *Posner v. Essex Ins., Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999).

Two recent decisions from this Court, *Laux v. Carnival*, 470 F.Supp.2d 1379 (S.D. Fla. 2007) (King, J.), and *Barnett v. Carnival Corporation*, 2007 AMC 1453 (S.D. Fla. 2007) (O'Sullivan, J.), are of particular relevance to this case. *Laux* involved a challenge to personal jurisdiction of a non-resident defendant who served as the ship's doctor on a ship that regularly ported in and out of Miami, Florida. In *Laux*, this Court acknowledged that "[w]hether personal jurisdiction exists over a foreign physician practicing medicine on a

12

cruise ship is a highly debated topic in the United States." *Laux*, 470 F.Supp.2d at 1382. However, it also concluded that despite the national debate, "Florida case law ... is clear: Florida Courts only have personal jurisdiction over a ship's doctor if the alleged malpractice occurred inside Florida's territorial boundaries." *Id.* (citing *Elmlund v. Mottershead*, 750 So. 2d 736 (Fla. 3d DCA 2000); *Rana v. Flynn*, 823 So. 2d 302 (Fla. 3d DCA 2002); and *Benson v. Norwegian Cruise Line*, Ltd., 859 So. 2d 1213 (Fla. 3d DCA 2003)). Because the decisive factual issue of wether the alleged malpractice had occurred inside Florida's territorial boundaries was in dispute, the *Laux* court ordered that a limited evidentiary hearing be held to reconcile the conflicting affidavits.[5] *Id.* at 1383.

*Barnett v. Carnival Corporation*, 2007 AMC 1453 (S.D. Fla. 2007), also involved a challenge to this Court's personal jurisdiction over a non-resident ship doctor because the alleged medical malpractice occurred outside the territorial boundaries of Florida. *Id.* at *2. In dismissing the doctor, the court stated that it was persuaded by the reasoning in *Laux*, and since it was undisputed that the medical care forming the basis of the plaintiff's claims against the doctor did not occur in Florida, the court lacked personal jurisdiction over the non-resident doctor. *Id.* at *6. With these principles in mind, I turn to the facts of the instant case.

A.    Whether personal jurisdiction may be exercised under § 48.193(1)(a)

As stated above, the first subsection under which Plaintiff alleges personal

---

5

Following the evidentiary hearing, the Court concluded it had personal jurisdiction because the alleged tortious medical service or advice was given when the parties where physically present in Miami. *See Laux v. Carnival Corp.*, Case No. 05-22278-CIV-KING, DE 83, 88, & 89.

13

jurisdiction over the Defendants is § 48.193(1)(a), which provides:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state of having an office or agency in this state. . . .

Fal. Stat. § 48.193(1)(a).

This subsection of the long-arm statute provides for specific jurisdiction, which arises out of the defendant's activities in Florida which are related to the cause of action being litigated. *Consol. Dev. Corp., v. Sherritt, Inc.*, 216 F.3d 1286 1291 (11th Cir. 2000); *Sun Trust Bank*, 184 F.Supp 2d at 1269. This requirement, often referred to as connexity, "is broader than the concept of 'proximate cause' and is satisfied by a showing of some direct affiliation, nexus, or substantial connection between the cause of action and the [defendant's] activities within the state." *Crowe v. Paragon Relocation Res.*, 506 F. Supp. 2d 1113, 1122 (N.D. Fla. 2007) (internal quotations omitted); *Citicorp Ins. Brokers (Marine) Ltd. v. J.R. Chairman*, 635 So. 2d 79, 81 (Fla. 1st DCA 1994)).

Under Florida law, in order to establish that a defendant was carrying on a business or business venture in the state of Florida for the purposes of personal jurisdiction under this statute, "the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005); *see also Sculptchair*, 94 F.3d at 627. In making this analysis, courts consider the following relevant,

14

but not dispositive factors: the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients. *Horizon Aggressive*, 421 F.3d at 1167.

Here, neither of the Defendants are licensed to practice medicine in the State of Florida. Nor have the Defendants ever had an office, medical or otherwise, in Florida. In the Interrogatories and un-controverted affidavits, Defendants have stated that neither has ever treated a patient within the territorial boundaries of Florida. More importantly, it is undisputed that the alleged malpractice occurred outside the territorial boundaries of Florida. Adopting the reasoning in *Laux* and *Barnett*, I conclude that under Florida law, I do not have personal jurisdiction over Drs. Berghall and Shah. Since "the appellant has failed to establish by sufficient proof the commission of a tort in Florida waters, we need not address the appellant's points ... regarding whether the doctor's activities constituted doing business in the state under section 48.193, since the connexity requirement, between the doctor's activities and the cause of action has not been met." *Small v. Chicola*, 929 So. 2d 1122, 1125 (Fla. 3rd DCA 2006) (citing see *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002)).[6]

    B.    Whether personal jurisdiction may be exercised under § 48.193(1)(f)(1)

Plaintiff also alleges that personal jurisdiction may be exercised pursuant to §

---

[6]

While the record evidences that at least some crewmembers might have been treated by the doctors while the vessel was within the territorial boundaries of Florida, the doctors did not obtain a pecuniary gain above and beyond their fixed salaries for treating these crewmembers.

15

48.193(1)(f)(1), which provides that:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>> (f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>>> 1. The defendant was engaged in solicitation or service activities within this state; or

Fla. Stat. § 48.193(1)(f)(1). Like the rest of § 48.193(1), this subsection provides specific

jurisdiction arising out of the defendant's activities in Florida which are related to the cause

of action being litigated. *See generally Crowe,* 506 F. Supp. 2d at 1122. The Florida

Supreme Court has held that this section "applies only when a defendant's out of state

actions cause personal injury or damage to physical property in the State of Florida." *Snow*

*v. DirecTV, Inc.,* 450 F.3d 1314, 1318 (11th Cir. 2006) (citing *Aetna Life & Cas. Co. v.*

*Therm-O-Disc, Inc.,* 511 So. 2d 992, 994 (Fla. 1987)). In addition, the provisions of

subsection § 48.193(1)(f) do not apply to situations in which only economic damages are

suffered within the state. *Prentice v. Prentice Colour, Inc.,* 779 F. Supp. 578, 585 (M.D.

Fla. 1991) (citing *Aetna Life &Cas. Co. v. Therm-O-Disc, Inc.,* 511 So. 2d 992 (Fla. 1987)).

Finally, there must be connexity between plaintiff's alleged injury and defendant's

solicitation and service activities in Florida.[7] *Crowe,* 506 F. Supp. at 1122; *Bond v. Ivy*

---

[7]

Plaintiff argues that the correct interpretation of § 48.193(1)(f) is that the injury must have occurred "at or about the time" that Defendants "were engaged in solicitation of service activities within this state." According to Plaintiff, requiring that the act or omission be related to the service activities giving rise to jurisdiction would make the statute a nullity because a person cannot provide services within Florida while committing the act or

*Tech State College*, 167 Fed. Appx. 103, 105 (11th Cir. 2006).

In *Price v. Point Marine, Inc.*, 610 So. 2d 1339 (Fla. 1st DCA 1992), the court held that § 48.193(1)(f) does not apply when persons outside of Florida are injured by acts or omissions which occur outside of the state. Id. at 1342. In *Price*, a seaman died in Florida as a result of injuries incurred while aboard the ship off the coast of Texas. The court stated that this subsection of the long-arm status "is designed to control situations in which acts or omissions committed outside the state (usually manufacturing) cause injury to Florida residents located within the state at the time of the injury." Id. (citing *Aetna Life & Cas. Co. v. Thermo-O-Disc, Inc.*, 488 So. 2d 83 (Fla. 1st DCA 1986)). While plaintiff died in Florida, the physical injury had occurred in Texas. Therefore, § 48.193(1)(f) was inapplicable on its face. Id.

The record evidence is that Plaintiff was injured and treated by Defendants while the vessel was in the High Seas, and outside the territorial boundaries of Florida. Thus, as was the case in *Price*, because Plaintiff was injured outside of Florida by acts or omissions which occurred outside of Florida, plaintiff's "reliance on this section is.. unavailing." *Price*, 610 So. 2d at 1342.

_____

omission outside Florida. Plaintiff's argument is contrary to well settled law. *See, e.g., Crowe*, 506 F. Supp. 2d at 1122 (requiring a connection between the alleged injury and the solicitation or services); *Miller v. Berman*, 289 F. Supp. 2d 1327, 1335 (M.D. Fla. 2003) (specific jurisdiction requires that the cause of action arise out of, or be related to, the defendant's contacts with the state) (citing *Nw. Aircraft Capital Corp. v. Stewart*, 842 So. 2d 190, 195 (Fla. 5th DCA 2003)). This requirement does not make § 48.193(1)(f) a nullity. The law does not require that the solicitation or service activity be the proximate cause of the injury. Rather it requires some "direct affiliation, nexus, or substantial connection between the cause of action and the [defendant's] activities within the state." *Crowe*, 506 F. Supp. 2d at 1122.

17

C.     Whether personal jurisdiction may be exercised under § 48.193(2)

Subsection (2) of the Florida long-arm statute is the general jurisdiction provision,

and it provides:

> (2) A defendant who is engaged in substantial and not isolated activity within
> this state, whether such activity is wholly interstate, intrastate, or otherwise,
> is subject to the jurisdiction of the courts of this state, whether or not the
> claim arises from that activity.

Fla. Stat. § 48.193(2).

General jurisdiction under § 48.193(2) does not require a connection between

defendant's activities and the cause of action in this case. *Snow v. DirecTV, Inc.*, 450 F.3d

1314, 1318 (11th Cir. 2006).  Under Florida law, "substantial and not isolated activity"

means "continuous and systematic general business contact" with the state of Florida. *Id.*;

*Rexam*, 471 F.Supp. 2d at 1298; *see Mother Doe I v. Al Makoum*, 2007 WL 2209258, *3

(S.D. Fla. July 30, 2007).  This requirement of "continuous and systematic general

business contact" also satisfies the due process requirements of the U.S. Constitution.

*Snow*, 450 F.3d at 1318-1319 ("Florida courts have held the term 'substantial and not

isolated activity' used in § 48.193(2) means 'continuous and systematic general business

contact' with Florida, a term used by the [United States] Supreme Court in Helicopteros to

determine whether general jurisdiction was permissible under the Due Process Clause.")

(citing *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 415-16 (1984));

*see Woods v. Nova Cos. Belize, Ltd.*, 739 So.2d 617, 620 (Fla. 4th DCA 1999).

In the Amended Complaint, Plaintiff sufficiently alleged jurisdiction over the non-

resident Defendants without alleging supporting facts. *See Venetian Salami Co. v.

Parthenais*, 554 So. 2d 499 (Fla. 1989).  Once the Defendants submitted their affidavits

objecting to the alleged jurisdictional basis, the burden shifted back to Plaintiff to "clearly show by competent proof that the allegations of the complaint justify personal jurisdiction." *Small*, 929 So. at 1124. Plaintiff has failed to do so. Plaintiff merely argues that since Defendants were hired by Royal Caribbean to provide medical services to passengers and crewmembers regardless of whether the ship was within the territorial boundaries of Florida, and since the Radiance was in Florida for part of the voyages, Defendants must have engaged in sufficient service activities within the state for the Court to exercise general jurisdiction over them. These conclusory allegations do not satisfy Plaintiff's burden, which requires that she affirmatively support her allegations with evidence. *Remax*, 471 F.Supp 2d at 1298. Therefore, since Defendants have submitted affidavits stating that they never engaged in substantial and not isolated activity within Florida, and since Plaintiff has failed to show otherwise, Defendants Berghall and Shah's Motions must be granted.

The record evidence is that Defendants have never resided in Florida, are not licensed to practice medicine in Florida, have never owned real property in Florida, have never operated an office in Florida, and have not otherwise engaged in any other type of substantial and not isolated activity in the state. Plaintiff merely argues that because Defendants lived on the ship for approximately six months, and the ship was in Florida for part of the voyages, and in between voyages, Defendants were residents of Florida. Plaintiff cites no authority to support her argument. Moreover, during oral argument, the parties agreed that during the regular course of the operation of the Radiance, the vessel arrived in Florida once a week, and departed that same afternoon. Even assuming that occasionally the vessel stayed at the Port of Miami for more than a few hours a week, the

19

amount of time spent within Florida's territorial boundaries was very minimal. Similarly, Plaintiff speculates that Defendants must have treated enough passengers during their short periods of time in Florida amounting to "substantial and not isolated activity within Florida." Plaintiff's speculations as to the activities of Drs. Berghall and Shah are not sufficient, in light of Defendants affidavits stating the opposite, to defeat their challenge to this Court's personal jurisdiction over them.

Plaintiff also points to record evidence showing that on January 8 and 15, 2006, a total of 12 crewmembers visited the infirmary. Plaintiff argues this is sufficient to establish continuous activity within the state. It is not. First, there is no way to know which of the three doctors or of the ship's nurses treated these 12 crewmembers. Second, the crewmembers received complimentary health services. Even assuming that Drs. Shah and Berghall treated these crewmembers while the ship was within the territorial boundaries of Florida, the doctors did not derive any additional pecuniary compensation for these treatments. It is hard to imagine how this minimal activity could amount to substantial and not isolated general business activity in the State of Florida by foreign doctors treating seaman inside a foreign flagged vessel.[8] Even if Plaintiff could overcome this hurdle, the

---

8

I further note that these doctors were not licensed to practice medicine in Florida, and that the Radiance is a Bahamian-flagged cruise ship. Doctors practicing medicine in foreign-flagged ships are not required to be licensed in every jurisdiction that the vessel visits. *See generally Lauritzen v. Larsen,* 345 U.S. 571, 581 (U.S. 1953) (holding that the law of the flag is paramount); *Mascolo v. Costa Crociere, S.p.A.,* 726 F. Supp. 1285 (S.D. Fla. 1989) (applying Italian regulation to ship's doctors in Italian flagged vessel). Instead, the doctor must meet the requirements under the law of the flag. It seems that if these doctors are considered to have been 'practicing medicine' in Florida, they would be engaging in the unlicensed practice of medicine contrary to law. Therefore, I express doubt as to whether rendering services aboard a ship while the vessel is in navigable waters, even if the ship is at port, can amount to a contact with the state of Florida. However, I need not resolve

20

amount of time spent within Florida's territorial boundaries during the doctors's six months contracts was very minimal. The majority of their services where performed on the high seas and at foreign ports of call. Therefore, Plaintiff's argument that this Court has general personal jurisdiction over the individual Defendants fails.

D.    Due process requirements of the U.S. Constitution

Even if I determined that the Florida long-arm statute was satisfied in this case, I would still grant the Motions because the due process requirements of the U.S. Constitution are not satisfied. Under Eleventh Circuit case law, "[c]onsiderations of due process require that a non-resident defendant have certain minimum contacts with the forum, so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Consol. Dev. Corp.*, 216 F.3d at 1291. This analysis varies depending on whether the personal jurisdiction asserted is specific or general. *Id.*

Specific jurisdiction arises out the defendant's activities in the forum state which are related to the cause of action being litigated. *Id.* With respect to specific jurisdiction, minimum contacts sufficient to support specific personal jurisdiction only exist where the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* To constitute minimum contacts, a defendant's contacts with the forum must satisfy three criteria: (1) the contacts must be related to the plaintiff's cause of action or have given rise to it; (2) the contacts must involve some act by which the defendant purposefully avails itself of the privilege of

---

this issue because, even accepting the doctors limited time within the territorial boundaries of Florida as contacts with the state, the doctors sporadic and minimal activities in Florida does not amount to "substantial and not isolated activity within this state."

21

conducting activities within the forum, thus invoking the benefits and protections of its laws; and (3) the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there. *McGow v. McCurry*, 412 F.3d 1207, 1214 (11th Cir. 2005).

With respect to general jurisdiction, which arises from contacts with the forum which are unrelated to the cause of action being litigated, due process requires "a showing of continuous and systematic general business contacts between the defendant and the forum state." *Consol. Dev. Corp.*, 216 F.3d at 1292. These contacts must be substantial. *Id.* ("We emphasize that a nonresident corporation's contacts with the forum that are unrelated to the litigation must be substantial in order to warrant the exercise of personal jurisdiction under Rule 4(k)(2).")

Based on the submissions and arguments of the parties, and taking all inferences in favor of Plaintiff, I conclude that the due process requirements of the U.S. Constitution would not be satisfied if personal jurisdiction were exercised over Defendants Shah and Berghall. Their only contact with the state was that the cruise line for which they were engaged as independent contractors does business in Miami. Their relationship with Royal Caribbean only lasted six months, and the cruise line had the right to transfer them to any other ship, at any time. At best, the doctors spent approximately 12 hours a week within the territorial boundaries of Florida. Neither Defendant is licensed to practice medicine in the state of Florida, and neither has ever had an office or conducted business in the state. Neither of the Defendants has ever owned property in Florida. In fact, neither Defendant has ever resided in Florida. Under these facts, Defendants could not have reasonably anticipated being haled into court here.

22

III.    Conclusion

For these reasons, I conclude that I cannot exercise personal jurisdiction over Defendants under Florida's long-arm statute, and that the exercise of personal jurisdiction over Defendants would not satisfy the requirements of due process under the Constitution.

Accordingly, it is hereby **ORDERED AND ADJUDGED:**

1.    Defendant Shah's Motion [DE 95] is GRANTED.

2.    Defendant Berghall's Motion [DE 108] is GRANTED.

3.    Defendants Berghall and Shah are DISMISSED for lack of personal jurisdiction.

4.    The Clerk of Court is instructed to TERMINATE these Defendants.

5.    This matter is no longer stayed.  Within twenty (20) days from the date of this Order, the remaining parties shall file an Amended Joint Proposed Scheduling Report pursuant to S.D. Fla. L.R. 16.1,and in conformity with the instructions in my December 27, 2007 Order Requiring Compliance with Local Rule 16.1 [DE 26].    The Amended Report shall include the attachments referenced in the December 27 Order.

**DONE AND ORDERED** in Chambers in Miami, Florida this 25 day of February, 2008.

THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
U.S. Magistrate Judge William C. Turnoff
All counsel of record

23